IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Stanley G.,[1] ) | |
| ) | C/A No. 6:23-cv-5669-RMG-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Martin J. O'Malley,[2] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and 28 U.S.C. § 636(b)(1)(B).[3]  The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits ("DIB") on July 28, 2017, alleging that he became unable to work on June 26, 2017 (Tr. 161–62).  The application was denied initially (Tr. 67–78) and on reconsideration (Tr. 80–93) by the Social

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.

[2] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for defendant Kilolo Kijakazi, who was the Acting Commissioner of Social Security when this action was filed.

[3] A report and recommendation is being filed in this case in which one or both parties declined to consent to disposition by the magistrate judge.

Security Administration.  On March 21, 2018, the plaintiff requested a hearing (Tr. 106–07). On August 29, 2019, an administrative hearing was held at which the plaintiff, represented by counsel, and Robert Brabham, an impartial vocational expert, appeared and testified before administrative law judge ("ALJ") Amanda Craven in Mauldin, South Carolina (Tr. 34–66).  On September 18, 2019, ALJ Craven considered the case *de novo* and found that the plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 19–33).  ALJ Craven's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on July 15, 2020 (Tr. 7–10).

On August 6, 2020, the plaintiff filed a complaint in the United States District Court for the District of South Carolina, and on April 20, 2021, the case was remanded to the Commissioner for further proceedings based on a voluntary motion to remand filed by the Commissioner (Tr. 770–72).  *Greer v. Comm'r Soc. Sec. Admin.*, C/A No. 6:20-cv-02874-RMG, at doc. 18 (D.S.C. Apr. 20, 2021).  On June 1, 2021, the Appeals Council issued an order consolidating a later filed DIB application with the instant matter and remanding the matter to an ALJ to issue a new decision in accordance with the order (Tr. 775–77).

On April 13, 2022, a second administrative hearing was held at which the plaintiff, represented by counsel, and Coraetta Harrelson, an impartial vocational expert, appeared and testified before ALJ Thaddeus J. Hess by telephone due to the COVID-19 pandemic (Tr. 659–94).  On May 3, 2022, ALJ Hess considered the case *de novo* and found that the plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 785–806).  On March 23, 2023, the Appeals Council issued an order remanding the matter to the ALJ to issue a new decision in accordance with the order (Tr. 809–10).

On June 29, 2023, a third administrative hearing was held at which the plaintiff, represented by counsel, and Donna Bardsley, an impartial vocational expert, appeared and testified before ALJ Hess in Greenville, South Carolina (Tr. 695–722).  On August 30, 2023, ALJ Hess considered the case *de novo* and found that the plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 621–55).  ALJ Hess' finding became the final decision of the Commissioner of Social Security pursuant to 20 C.F.R. § 404.984(d).  The plaintiff then filed this action for judicial review (doc. 1).

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)     The claimant last met the insured status requirements of the Social Security Act on December 31, 2022.

(2)     The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 26, 2017, through his date last insured of December 31, 2022 (20 C.F.R. § 404.1571 *et seq*.).

(3)     Through the date last insured, the claimant had the following combination of severe impairments:  degenerative disc disease of the lumbar spine, degenerative joint disease of the shoulder and hip, PTSD, anxiety disorder, and depressive disorder (20 C.F.R. § 404.1520(c)).

(4)     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

(5)     After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently with standing and walking for 6 hours of an 8-hour workday and sitting for 6 hours of an 8-hour workday.  He can perform simple, routine tasks for 2-hour blocks of time with normal rest breaks during an 8-hour workday, never interact with the general public, and occasionally work with or alongside coworkers and supervisors to complete tasks.

(6)     Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

3

(7)     The claimant was born on December 20, 1969, and was a younger individual age 18-49, on the alleged onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. § 404.1563).

(8)     The claimant has at least a high school education (20 C.F.R. § 404.1564).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569 and 404.1569a).

(11)     The claimant was not under a disability, as defined in the Social Security Act, at any time from June 26, 2017, the alleged onset date, through December 31, 2022, the date last insured (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

Under 42 U.S.C. § 423(d)(1)(A), (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets

4

or medically equals an impairment contained in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1, (4) can perform his past relevant work, and (5) can perform other work. *Id.* § 404.1520. If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A claimant must make a *prima facie* case of disability by showing he is unable to return to his past relevant work because of his impairments. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Once an individual has established a *prima facie* case of disability, the burden shifts to the Commissioner to establish that the plaintiff can perform alternative work and that such work exists in the national economy. *Id.* (citing 42 U.S.C. § 423(d)(2)(A)). The Commissioner may carry this burden by obtaining testimony from a vocational expert. *Id.* at 191–92.

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. Consequently, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## ANALYSIS

The plaintiff, who was 47 years old on the alleged disability onset date, seeks disability based upon physical and mental impairments that limit his ability to work. He has past relevant work experience as machine operator II, material handler, hand packer, and

5

forklift operator (Tr. 644).   The plaintiff argues that ALJ Hess[4] erred by failing to appropriately explain his consideration of opinion evidence (doc. 8 at 21–36).   The Commissioner, on the other hand, asserts that the ALJ's decision is supported by substantial evidence and should be affirmed (doc. 9 at 11–28).

As an initial matter, of note, although the plaintiff's brief purports to address the ALJ's evaluation of opinion evidence for fifteen pages, thirteen of those pages summarize the opinion evaluations at issue, leaving only two pages for the plaintiff's explanation of his assertion of error with respect to the consideration of opinion evidence from three different doctors (*compare* doc. 8 at 21–34 (summarizing opinion evidence) *with* doc. 8 at 34–36 (arguing that opinion evidence was improperly evaluated)).   Courts have held that when a plaintiff raises an issue in a perfunctory manner, the issue is deemed waived.   *See Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (noting that the plaintiff's "perfunctory argument" was arguably abandoned (citing *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue)); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (finding that issues raised in a perfunctory manner "without elaboration or legal argument" "unaccompanied by some effort at developed argumentation" were deemed waived (internal citations and quotation marks omitted)); *Parms v. Colvin*, C/A No. 1:13-cv-01002, 2015 WL 1143209, at *8 n.10 (M.D.N.C. Mar. 13, 2015) (noting that the "Court need not address . . . perfunctory arguments by counsel), *memorandum and recommendation adopted by* doc. 32 (M.D.N.C. Mar. 31, 2015).   Indeed, the court is not required to rummage through the administrative record to construct and present a well-supported position for the plaintiff.   *See Hayes v. Self-Help Credit Union*, C/A No. 1:13-cv-00880, 2014 WL 4198412,

---

[4] Because the decision by ALJ Hess is the one under consideration in this action, the remainder of this report and recommendation will refer to him as "the ALJ."

at *2 (M.D.N.C. Aug. 22, 2014) (noting that "[i]t is not the role or the responsibility of the Court to undertake the legal research needed to support or rebut a perfunctory argument" (internal citations omitted)). Nevertheless, despite the perfunctory nature of the plaintiff's arguments regarding the ALJ's evaluation of opinion evidence, the undersigned will address the ALJ's consideration of opinion evidence.

Additionally, in passing, on the last page of his brief, the plaintiff notes that the ALJ also erred in finding the plaintiff's subjective complaints inconsistent with the record based on *Shelly C.* (doc. 8 at 36 (citing *Shelly C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341 (4th Cir. 2023)). It is unclear what portion of *Shelly C.* the plaintiff relies on in support of this assertion, as there is just a reference to page "*12" in the citation – instead of the page numbers for the Federal Reporter, which is the pagination available on Westlaw (*see id.*). Further, the plaintiff appears to recognize in his reply brief that a challenge pursuant to Social Security Ruling 16-3p based on *Shelly C.* has not been properly raised, arguing instead that the ALJ's decision runs afoul of *Shelly C.* based on the improper evaluation of opinion evidence (doc. 10 at 11). The plaintiff goes on to note that *Shelly C.* extends to all aspects of an ALJ's decision, but in requesting relief only seeks remand based upon inappropriate consideration of opinion evidence (*id.* at 11–12). As such, based on the foregoing, the undersigned finds no preserved assertion of error with respect to the ALJ's evaluation of the plaintiff's subjective complaints, and the undersigned will only address the plaintiff's challenge to the ALJ's evaluation of opinion evidence.

***Medical Source Statements***

The plaintiff argues that the ALJ failed to appropriately evaluate opinion evidence from Patrick Mullen, M.D.; compensation and pension ("C&P") examiner Judith Taylor, Ph.D.; and state agency examiner Xanthia Harkness, Ph.D. (doc. 8 at 21–36). For applications filed on or after March 27, 2017, such as the plaintiff's herein, a new regulatory framework for considering and articulating the value of medical opinions has been

7

established.  *See* 20 C.F.R. § 404.1520c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017).   Most notably, the new regulations no longer require that special significance be given to opinions by a claimant's treating physician.   *See* 20 C.F.R. § 404.1527 (noting that the treating physician rule only applies to claims filed before March 27, 2017).  Indeed, the ALJ is not required to defer to or give any specific weight to medical opinions.   *Id*. § 404.1520c(a).   Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion.   *Id.* § 404.1520c(b), (c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence.   *Id*. § 404.1520c(a), (b)(2).   An ALJ *may*, but is not required to, explain how the remaining factors were considered.   *Id*. § 404.1520c(b)(2).   In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  *Id*. § 404.1520c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  *Id*. § 404.1520c(c)(2).

As an initial matter, the undersigned finds that the ALJ provided an appropriate analysis of opinion evidence from Drs. Mullen, Taylor, and Harkness, which is set forth in more detail below with respect to the supportability and consistency analysis of each opinion.  Additionally, the undersigned finds that the ALJ's opinion analysis comported with *Shelly C*.  The court in *Shelly C*. specifically noted that because chronic depression was also a disease that does not produce objective evidence, the extension of the doctrine

(first set out in *Arakas v. Comm'r Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020)) was appropriate. *See Shelly C.*, 61 F.4th at 361 (noting that an ALJ cannot rely on the absence of objective medical evidence to discredit a claimant's subjective complaints when evaluating chronic depression). Here, the ALJ – unlike the ALJ in *Shelly C.* – detailed the plaintiff's longitudinal treatment records in finding them unsupportive of and inconsistent with portions of opinion evidence from Drs. Mullen, Taylor, and Harkness (Tr. 639–43). Indeed, although the plaintiff disagrees with the ALJ's conclusions, the ALJ in this case – unlike in *Shelly C.* – specifically noted both positive and benign examination findings in analyzing the plaintiff's treatment records and finding that the plaintiff could engage in a range of work with certain nonexertional limitations. Moreover, *Shelly C.* involved the application of opinion analysis regulations not applicable to the plaintiff's application, which was filed after March 27, 2017. *Shelly C.*, 61 F.4th at 353–55 (analyzing opinion evidence based on regulations applicable for claims filed before March 27, 2017). As such, the undersigned finds unavailing the plaintiff's assertion that the ALJ's opinion analysis did not comport with *Shelly C.*

### Dr. Mullen

Dr. Mullen completed a psychiatric evaluation of the plaintiff that was dictated on March 15, 2017. Dr. Mullen summarized the plaintiff's service in the military along with incidents that occurred after the plaintiff left the military. The plaintiff had a happy childhood, his parents were still alive and healthy at the time of the evaluation, he had two adult children with a prior girlfriend, and lived with his girlfriend. The plaintiff reported difficulty at work secondary to being irritable with lazy co-workers. The plaintiff's daily activities included staying home and watching television. The plaintiff had slow psychomotor speed, but was "very quick" and his temper was visible. The plaintiff's affect was depressed and somewhat anxious, but he had good hygiene and dress. The plaintiff's memory was intact, and his sensorium was clear. The plaintiff's thought process and content were somewhat

ruminative, and he dwelled on difficulty controlling his anger. Dr. Mullen noted that the plaintiff got mad quickly in the office just remembering quarrels from the past or how he had been treated in the past. Dr. Mullen diagnosed posttraumatic stress disorder ("PTSD"), chronic, severe; depression, moderate to severe; anxiety; status post hip injury and status post shoulder injury; stressors severe – wartime; and a Global Assessment of Functioning of 45. Dr. Mullen opined that it was stressful for the plaintiff to be in the workplace and that special arrangements made with his supervisor to accommodate his difficulties in the workplace may not continue. Dr. Mullen also opined that the plaintiff was totally disabled and a danger to fellow co-workers and supervisors (Tr. 371–75).

The ALJ considered Dr. Mullen's opinions and found them partially persuasive (Tr. 641–43). The ALJ noted that he found Dr. Mullen's opinions persuasive to the extent they indicated "a need to limit the [plaintiff's] ability to perform mental tasks and to work around the public, co-workers, and supervisors" but unpersuasive to the extent Dr. Mullen opined that the plaintiff could not work (Tr. 641–43). Here, it appears that the plaintiff requests that this court reweigh evidence considered by the ALJ and come to a different conclusion, which is beyond the purview of substantial evidence review. *Craig*, 76 F.3d at 589. Indeed, the plaintiff has not argued which of Dr. Mullen's opined limitations the ALJ should have adopted – although it appears that the limitation the plaintiff argues should have been adopted was that the plaintiff was incapable of work. However, statements on issues reserved to the Commissioner (such as that the plaintiff is disabled and unable to work) are inherently neither valuable nor persuasive and require no analysis under the regulations applicable to the plaintiff's claim. *See* 20 C.F.R. § 404.1520b(c). Nevertheless, the undersigned will address the ALJ's evaluation of the supportability and consistency of Dr. Mullen's opined limitations.

10

First, as noted by the ALJ, Dr. Mullen's opined limitations were not fully supported by his examination notes.[5]  For example, as noted by the ALJ, Dr. Mullen's notations that the plaintiff was fully oriented, had intact memory, had clear sensorium, denied hallucinations, and had very good intelligence were not supportive of additional limitations than provided for in the RFC assessment (Tr. 642).  Further, as noted by the ALJ, the examination of the plaintiff by Dr. Mullen was performed well before the alleged onset date and at a time when the plaintiff was working at a job (that he reportedly hated), which required demands in excess of those provided for in the RFC assessment (Tr. 642). Indeed, the ALJ noted that he relied on portions of Dr. Mullen's evaluation in limiting the plaintiff to simple routine tasks for two-hour blocks of time with no interaction with the public and only occasional interaction with co-workers and supervisors (Tr. 628).  As noted, the plaintiff has not referenced evidence from Dr. Mullen's evaluation that was supportive of additional work-prohibiting limitations in the plaintiff's ability to interact with others. Accordingly, the undersigned finds that substantial evidence supports the ALJ's determination that Dr. Mullen's opined limitations were only partially supported by his treatment notes.

The ALJ also discussed the consistency of Dr. Mullen's opined limitations, finding that the limitations opined by Dr. Mullen were not fully consistent with the record evidence.  The ALJ noted records consistent with Dr. Mullen's opined limitations (and subsequently the mental limitations adopted in the RFC assessment), including notations during a C&P exam that the plaintiff was irritable and subjective complaints by the plaintiff of trouble with crowds, problems with road rage, distrust of the police, ongoing racial

---

[5] As noted by the ALJ, the plaintiff's treatment relationship with Dr. Mullen is unclear (Tr. 642).  Notes from the C&P exam indicate that the plaintiff treated with Dr. Mullen for four weeks; however, there are no notes or treatment records from Dr. Mullen other than the one-time psychological evaluation of the plaintiff dictated in March 2017 (although the evaluation has been included twice in the record) (see Tr. 371–75, 1088–92).

injustice, and conflicts at work (Tr. 642). However, the ALJ also noted specific record evidence inconsistent with Dr. Mullen's opined limitations (*see* Tr. 642–43). For example, the ALJ noted that despite notations by Dr. Mullen that the plaintiff would be a danger to co-workers or supervisors, he continued to receive conservative care for his mental health during the relevant period and did not have any acute exacerbations requiring hospitalization (Tr. 642). Further, as noted by the ALJ, upon examination by Dr. Taylor, the plaintiff had normal hygiene, dress, eye contact, rapport, cooperativeness, pleasantness, orientation, thought content, thought expression, judgment, and insight, and he was not distractible, impulsive, restless, disinhibited, or hypervigilant (Tr. 642 (citing Tr. 308–17)). Similarly, treatment notes from the plaintiff's primary mental health provider at the Veterans Health Administration ("VA") Hospital, Marc Ishizuka, D.O., regularly noted that the plaintiff was cooperative, friendly, polite, sincere, had normal speech, had good eye contact, had normal thought process, had no hallucinations, had no delusions, had no homicidal or suicidal ideation, and had good insight and judgment (Tr. 642–43). Further, as noted by the ALJ, although the plaintiff was intermittently noted as irritable with a depressed mood, he reported enjoying life and that his medications improved his sleep and mood (Tr. 642–43). These treatment records, noting relatively conservative treatment with few medication changes (along with only occasional medical compliance by the plaintiff) as noted by the ALJ, were inconsistent with Dr. Mullen's opined limitations regarding the plaintiff's ability to get along with others. Moreover, as noted by the ALJ, the plaintiff's own activities of daily living ("ADLs") were inconsistent with Dr. Mullen's notation that the plaintiff could not be around co-workers or supervisors (Tr. 643). For example, the plaintiff reported working out at a public gym, playing basketball games at the court in his neighborhood, playing pool, going to bars, spending time with (and moving in with) his girlfriend, taking his mother to medical appointments, serving as his brother's power of attorney ("POA"), and caring for his nieces and nephews during school closings (Tr. 643 (citing Tr. 296–369, 388–463)).

Moreover, as recognized by the ALJ, the plaintiff reported increased tolerance with people (during brief interactions) (Tr. 643). The plaintiff also reported being able to sit with his elderly grandmother, watching television, handling his personal care routine without reminders, preparing simple meals, ironing clothes, doing laundry, driving short distances, shopping by computer, counting change, handling a savings account, paying bills (depending on his financial situation), going fishing, attending church, and reported being able to follow written and oral instructions (Tr. 643 (citing Tr. 225–32)). All of these reported ADLs, as noted by the ALJ, were inconsistent with notations by Dr. Mullen that the plaintiff could not be around anyone. Instead, the ALJ noted that the activities were consistent with the RFC assessment limiting the plaintiff to simple routine tasks in two-hour increments, no interaction with the public, and only occasional interaction with co-workers/supervisors. As noted, the plaintiff has not identified record evidence the ALJ omitted in finding Dr. Mullen's opined limitations only partially consistent with the record evidence. Thus, the undersigned finds that substantial evidence supports the ALJ's determination that Dr. Mullen's opinion was not entirely persuasive, and that determination should be affirmed.

### Dr. Taylor

On June 16, 2017, just before the alleged onset date, Dr. Taylor performed a C&P examination of the plaintiff for the VA. Dr. Taylor noted that the plaintiff had been diagnosed with PTSD with prominent anger/aggression and some co-morbid depressive symptoms. The plaintiff's level of social and occupational impairment was defined as "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." The plaintiff was not married, but had been living with his girlfriend for six months. The plaintiff had three close friends from childhood. He enjoyed watching television and running, but reported chronic interpersonal conflicts with co-workers and supervisors. The plaintiff reported having a gun (although he was a convicted felon and knew he was not allowed to have a gun) and indicated that he

13

had in the past thought about shooting himself or overdosing on pills, but stopped after thinking about his kids. Dr. Taylor noted that the plaintiff's PTSD rating had increased from 50% to 70% in 2014, but that Dr. Taylor was evaluating individual unemployability.  The plaintiff arrived thirty minutes early for his appointment with Dr. Taylor and was accompanied by his girlfriend.  The plaintiff was neatly groomed, had good hygiene, rapport was easily established, he was cooperative and pleasant, and he was not unusually distractible or hypervigilant. Dr. Taylor noted that the plaintiff was fully oriented and expressed his thoughts fluently, but the plaintiff appeared to focus on providing examples of anger/irritability and work-related issues (some from many years ago), which made it difficult to obtain some relevant information.  Dr. Taylor administered the Mississippi Combat Stress Scale (a self-report measure of combat-related PTSD), and the plaintiff scored a 129, with the cutoff noted as 107 and the average for PTSD a 130 (with a standard deviation of 18).  The Personality Assessment Inventory ("PAI") noted a generally valid profile with usual responses, but without evidence to suggest inconsistency or negative/positive impression management.  Dr. Taylor noted that the PAI results were suggestive of tension, unhappiness, pessimism, and ruminative worry (with various stressors) contributing to low mood and self-esteem.  Dr. Taylor noted that the plaintiff would likely be withdrawn and be in generalized distress overall.  Dr. Taylor opined that the plaintiff would have a moderate to severe impairment in his ability to work cooperatively and effectively with the public, co-workers, or supervisors.  Dr. Taylor also opined that the plaintiff would have a mild to moderate impairment in his ability to maintain focus, attend to details, and understand and retain instructions, which would increase the risk of mistakes.  The plaintiff would also have a mild to moderate impairment in his ability to maintain task persistence and pace and complete work in an efficient, organized, and timely manner (Tr. 308–17).

The ALJ considered the opinions in the C&P examination by Dr. Taylor and found them partially persuasive (Tr. 640–41). The ALJ noted that the vagueness of Dr. Taylor's opinions made them less persuasive, but noted that her opinions were persuasive to the extent they substantiated that the plaintiff could perform simple, routine tasks in two-hour intervals, no public interaction, and reduced interaction with co-workers and supervisors (Tr. 640–41). The ALJ went on to address the supportability and consistency of Dr. Taylor's opinions (Tr. 640–41). As noted above, the plaintiff has not argued what evidence the ALJ erred in considering in finding Dr. Taylor's opined limitations only partially persuasive; thus, the undersigned will analyze the supportability and consistency analysis provided by the ALJ.

Here, as noted by the ALJ, Dr. Taylor's examination notes were only partially supportive of her opined limitations. For example, during the C&P exam, the plaintiff was irritable with subjective remarks consistent with anxiety, depression, and socialization issues, but Dr. Taylor noted that the plaintiff had normal hygiene, normal dress, good eye contact, easily established rapport, was cooperative and pleasant, was fully oriented, had normal thought content and expression, and had good insight and judgment without distractibility, impulsiveness, or hypervigilance (Tr. 640). These observations by Dr. Taylor and the easily established rapport were not supportive of her opinion that the plaintiff would have a moderate to severe impairment in his ability to work with co-workers or supervisors at least part of the day (as limited in the RFC assessment). In light of the foregoing, the ALJ found that Dr. Taylor's examination notes were only partially supportive of her opined limitations.

The ALJ then went on to address the consistency of Dr. Taylor's opined limitations, recognizing that Dr. Taylor's opinion was only partially consistent with the record evidence. For example, the ALJ noted that Dr. Taylor's opined limitations were consistent with record evidence noting the plaintiff's long term mental health treatment as well as

15

abnormal examination findings including notes of irritability, depressed mood, tired mood, irritability, and impaired concentration (Tr. 641). However, the ALJ noted that Dr. Taylor's examination findings were not fully consistent with other record evidence; thus, he found them only partially persuasive in limiting the plaintiff to simple routine tasks for two-hour periods and with no public interaction and occasional co-worker/supervisor interaction. For example, the ALJ noted that the plaintiff's longitudinal mental health treatment had been conservative in nature with no hospitalizations. The plaintiff had only intermittent clinical findings of irritability or depressed mood upon presentment to the VA in 2017, and he was regularly cooperative, friendly, and polite (Tr. 641). Similarly, the plaintiff reported social ADLs that were inconsistent with Dr. Taylor's opined limitations in the areas of working with others, including that the plaintiff played basketball in the neighborhood, played pool in public, went to bars, spent time/lived with his girlfriend, took care of his nieces/nephews when school was closed, acted as POA for his brother, took his mother to medical appointments, attended church, and drove at least short distances (Tr. 641). These ADLs, as noted by the ALJ, were consistent with the RFC assessment wherein the plaintiff was limited, among other things, to no public interaction and only occasional interaction with co-workers and supervisors. As noted, the plaintiff has not referenced record evidence in support of his argument that the ALJ erred in finding Dr. Taylor's opined limitations only partially persuasive – nor has he argued what limitations the ALJ should have adopted from Dr. Taylor. As such, the undersigned finds that the ALJ's evaluation of opinion evidence from Dr. Taylor is supported by substantial evidence and should be affirmed.

### Dr. Harkness

On September 22, 2017, Dr. Harkness submitted a mental RFC assessment for the plaintiff. Dr. Harkness noted that the plaintiff did not have understanding and memory limitations or adaption limitations (Tr. 75–76). The plaintiff had limitations in the areas of concentrating, persisting, and maintaining pace as well as in social interactions.

The plaintiff was not significantly limited in his ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; and in completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The plaintiff was moderately limited in his ability carry out detailed instructions and to maintain attention and concentration for extended periods. The plaintiff was not significantly limited in his ability to ask simple questions or request assistance or maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. The plaintiff was moderately limited in his ability to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Dr. Harkness then opined that the plaintiff could remember location and work-like procedures and could understand and remember short and simple as well as detailed instructions. The plaintiff could carry out very short and simple instructions, but would struggle with detailed instructions. The plaintiff could attend to and perform simple tasks without special supervision for at least two-hour periods and could understand normal work-hour requirements and be prompt within reasonable limits. The plaintiff could work in proximity to others without being unduly distracted and could make simple work-related decisions. The plaintiff's symptoms would not interfere with satisfactory completion of a normal workday/week or require an unreasonable number of rest or cooling off periods. The plaintiff could ask simple questions and request assistance from peers or supervisors and would do best in situations that did not require on-going interaction with the public. The plaintiff could sustain appropriate interaction with peers and co-workers without undue

interference in work, but would work best in a setting where he had limited contact with a few co-workers and supervisors. The plaintiff could sustain socially appropriate work behavior, standards, and appearance. The plaintiff could respond appropriately to changes in a routine setting and would be aware of personal safety and could avoid work hazards. The plaintiff could travel to and from work using available transportation and had the capacity to set goals (Tr. 75–76).

The ALJ considered the opinion by Dr. Harkness (and the other state agency administrative reviewers) and found them partially persuasive (Tr. 639–40). The ALJ noted that he found persuasive Dr. Harkness' opinion that the plaintiff would need RFC limitations relating to task completion and social interaction, but found unpersuasive Dr. Harkness' opinion that the plaintiff could only complete very short instructions (Tr. 639). The ALJ also noted that the opinion was not persuasive to the extent it failed to quantify what "ongoing" public interaction meant or what "few" peers and co-workers meant (Tr. 639). The ALJ went on to note that the opinion was only partially persuasive because Dr. Harkness reviewed the record in 2017, and the full record evidence was not fully consistent with her opined limitations and outlined record evidence consistent with Dr. Harkness' opinion (Tr. 639–40).

The ALJ then addressed specific record evidence that was inconsistent with Dr. Harkness' opined limitations (Tr. 639–40). For example, the ALJ recognized that the plaintiff received conservative care for his mental impairments with few changes to his medications (Tr. 640). Similarly, the ALJ recognized benign examination findings by Dr. Mullen (including full orientation, intact memory, clear sensorium, no hallucinations, and very good intelligence) as well as by Dr. Taylor (normal hygiene, dress, eye contact, rapport, cooperativeness, pleasantness, orientation, thought content, thought expression, judgment, and insight, without unusual distractibility, impulsiveness, restlessness, or hypervigilance). Likewise, treatment records with the VA during 2017 noted intermittent depressed mood or that the plaintiff was irritable, with most of the notes indicating that the

18

plaintiff was cooperative, friendly, polite, sincere, and had normal speech, maintained good eye contact, had normal thought process, had no hallucinations or delusions, had no homicidal or suicidal ideation, and had good insight and judgment (Tr. 640). The ALJ also noted that the plaintiff reported to VA providers that he was enjoying life and that his medications were improving his sleep and mood (Tr. 640). The plaintiff likewise noted becoming more tolerant of being around people (Tr. 640 (citing 296–369, 376–84, 388–463, 474–617, 1094–1199, 1206–07, 1459–1562)). Similarly, as recognized by the ALJ, the plaintiff's reported ADLs were inconsistent with Dr. Harkness' opinion regarding social interaction, as the plaintiff reported working out at a gym, going for walks, playing basketball with others in the neighborhood, attending church, playing pool, going to bars, spending time with his friends, living with his girlfriend, taking his mother to medical appointments, caring for his niece/nephew, and handling affairs as his brother's POA (Tr. 640 (citing Tr. 225–32, 296–369, 388–423, 424–63)). Contrary to Dr. Harkness' opinion that the plaintiff could only engage in very short instructions, the ALJ noted that the plaintiff reported being able to handle his personal care routine without reminders, use reminders to take medications, prepare simple meals, do laundry, iron clothes, ride in a car, drive short distances, shop on the computer, count change, handle a savings account, pay bills (depending on his financial condition), go fishing, and follow written and verbal instructions (Tr. 640 (citing Tr. 225–32)). Based on the foregoing record evidence, the ALJ found Dr. Harkness' opined limitations only partially persuasive. As noted, although the plaintiff argues that the record evidence was consistent with additional limitations opined by Dr. Harkness, he has provided no reference to such records that were overlooked by the ALJ. As such, the undersigned finds that substantial evidence supports the ALJ's evaluation of opinion evidence from Dr. Harkness and should be affirmed.

As outlined above, the ALJ appropriately explained his findings regarding the persuasiveness of opinion evidence, as required by the regulations. This court should not

disturb the ALJ's weighing of the medical opinion evidence of record absent some indication the ALJ dredged up "specious inconsistencies." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). As such, the undersigned recommends that the district court find that the ALJ's evaluation of opinion evidence is based upon substantial evidence and without legal error.

### CONCLUSION AND RECOMMENDATION

The Commissioner's decision is based upon substantial evidence and is free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

**IT IS SO RECOMMENDED**.

s/Kevin F. McDonald
United States Magistrate Judge

August 27, 2024
Greenville, South Carolina

***The attention of the parties is directed to the important notice on the following page.***

20

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

21