IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Stanley Greer,<br><br>    Plaintiff,<br><br>vs.<br><br>Martin J. O'Malley, Commissioner of<br>Social Security,<br><br>    Defendant. | Civil Action No. 6:23-5669-RMG<br><br>**ORDER** |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 D.S.C., this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on August 27, 2024, recommending that the Commissioner's decision be affirmed. (Dkt. No. 12). Plaintiff filed an objection to the R & R, and the Commissioner filed a reply. (Dkt. Nos. 13, 15). For the reasons set forth below, the Court adopts the R & R of the Magistrate Judge (with one minor exception) as the Order of the Court and affirms the decision of the Commissioner.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection

is made.  The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge.  28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance."  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action."  *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard.  *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Plaintiff's claim is subject to the provisions of 20 C.F.R. § 404.1520c, which became effective for cases filed after March 27, 2017 and involves the standards for evaluation of medical opinions.  Under this new regulation, the two most critical factors for weighing medical opinions are the supportability and consistency of the expert opinions.  Lesser importance is given to such factors as relationship with the claimant, length of treatment relationship,

frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, the examining relationship, and specialization. § 404.1520c(c)(1)-(5).

## Discussion

Plaintiff is a Desert Storm veteran found by the Administrative Law Judge ("ALJ") to suffer from various severe physical and mental impairments, including lumbar disc disease, degenerative joint disease of the shoulder and hip, post traumatic stress disorder ("PTSD"), and depressive disorder. (Dkt. No. 7-7 at 4). These findings are not challenged. What is challenged is whether this combination of impairments has rendered Plaintiff disabled under the Social Security Act. Plaintiff's application for disability benefits has traveled a protracted course, including three administrative hearings, a reversal and remand by this Court (at the request of the Commissioner), and a second reversal and remand by the Appeals Council. (Dkt. No. 12 at 2-3). The last ALJ decision, issued on August 30, 2023, is now before the Court, and Plaintiff's objections to the R & R of the Magistrate Judge have been fully briefed and are ready for disposition.

The ALJ's August 2023 decision concludes that notwithstanding Plaintiff's severe physical and mental impairments, he retains the residual functional capacity ("RFC") to perform medium work with the following limitations: (1) he is limited to simple, routine tasks for two hour blocks of time with normal rest breaks during the eight hour workday; (2) he must never interact with the general public; and (3) he must work only occasionally with or alongside coworkers and supervisors to complete tasks. (Dkt No. 7-8 at 12). In reaching this RFC, the ALJ discussed in considerable detail the findings and conclusions of several medical providers, most notably Dr. Patrick Mullen, a psychiatrist, and Dr. Judith W. Taylor and Dr. Xanthia Harkness,

two psychologists. Each of these experts found that Plaintiff suffered from severe mental impairments, including PTSD, which limited his ability to work cooperatively and effectively with coworkers and supervisors. They reached, however, different conclusions regarding the impact of Plaintiff's mental impairments on his capacity to work full time in a competitive employment environment.

Dr. Mullen documented Plaintiff's long history of violent physical confrontations and difficulty in anger management, some of which predated his military service in Iraq. Dr. Mullen further documented Plaintiff's difficult interpersonal reactions with coworkers and supervisors, which contributed to the loss of employment. Plaintiff complained to Dr. Mullen, "I just can't deal with people." (Dkt. No. 7-7 at 77). Dr. Mullen noted that Plaintiff appeared to have slow psychomotor skills and would visibly lose his temper by simply discussing prior instances of conflicts with others. (*Id*. at 78-79). Dr. Mullen diagnosed Plaintiff with severe PTSD, moderate to severe depression, and anxiety, and concluded that he was totally disabled from work and was a "danger to his fellow workers and his supervisor . . ." (*Id.* at 81).

The ALJ did not question Dr. Mullen's diagnoses of PTSD, anxiety disorder, and depressive disorder, but found that the limitations placed in the Plaintiff's RFC were sufficient to address these impairments. The ALJ found Dr. Mullen's opinions partially persuasive. The ALJ found Dr. Mullin's opinions about Plaintiff's difficulties in working around others and in performing mental tasks persuasive but found the conclusion that Plantiff's mental impairments prevented him from any work unpersuasive. (Dkt. No. 7-8 at 25-26). In reaching that conclusion, the ALJ pointed to specific record evidence that supported the conclusion that Plaintiff's impairments did not prevent him from handling the limited contact with coworkers

and supervisors provided in his RFC.  These included: (1) Plaintiff was fully oriented during counseling sessions with providers; (2) Plaintiff was well groomed, made normal eye contact and was cooperative and pleasant during counseling; (3) Plaintiff was able to workout in a gym, play basketball and pool, go to bars, see friends, and spend time with his girlfriend; (4) Plaintiff noted that he had become more tolerant of people in brief encounters; (5) Plaintiff was able to assist his mother with medical appointments and to watch nieces and nephews during school closings; (6) Plaintiff was able to function as his brother's power of attorney; (7) Plaintiff declined to change any of his mental health medications because they "work for me;" (8) Plaintiff's mental health impairments were managed conservatively and did not require recurrent visits to the emergency room or any hospitalizations; and (9) Plaintiff engaged in such regular activities as preparing simple meals, doing laundry, driving short distances, shopping by computer, handling a savings account, paying bills, going fishing, attending church services, and following written or oral instructions. (*Id*. at 17-20, 26-27).

Dr. Judith Taylor conducted an evaluation of Plaintiff on June 17, 2024 and documented "chronic interpersonal conflicts with coworkers and supervisors" on two different jobs. (Dkt. No. 7-7 at 16).  She noted that Plaintiff reported that he experienced difficulty finding and keeping jobs "because of a history of felony conviction in 1992 for aggravated assault and battery." (*Id*.) Dr. Taylor concluded that Plaintiff's diagnosis of PTSD was correct and that he manifested some symptoms associated with combat exposure during the Gulf War. (*Id*. at 21, 23).  Dr. Taylor concluded that Plaintiff had a moderate to severe impairment regarding his ability to work cooperatively and effectively with coworkers and supervisors, and had mild to moderate

impairments regarding maintaining focus, attending to details, retaining instructions and maintaining tasks. (*Id.* at 23).

The ALJ found many of Dr. Taylor's findings persuasive, including Plaintiff's moderate to severe limitation of working cooperatively with others and mild to moderate limitations on maintaining focus and tasks. The ALJ pointed to the record evidence cited in detail above, which the ALJ found supported Dr. Taylor's conclusions and supported the ALJ's conclusion that Plaintiff's impairments were not disabling. (*Id*. at 25). The ALJ found less persuasive Dr. Taylor's failure to provide proposed functional limitations to address Plaintiff's work-related impairments. (*Id*. at 26).

The ALJ also made reference to State Agency chart reviews, most notably the evaluation performed by Dr. Harkness. Dr. Harkness, after reviewing the various mental health reports, found Plaintiff's statements that he was unable to work with others only "partially consistent" because at the time of a recent VA evaluation he was working full time. (Dkt. No. 7-3 at 8). She recognized that Plaintiff had conflicts with others but was able to maintain a relationship with his girlfriend, assist his grandmother, attend church weekly, visit the gym and bars regularly, spend time with friends, and drive short distances. (*Id.*). Dr. Harkness recognized that Plaintiff was likely to have "emotional interference at times" but still maintained the ability to perform work "relatively independently and have minimal interactions with co-workers, supervisors and the general public." (*Id*.). The ALJ found this portion of Dr. Harnkness' report persuasive but found her failure to quantify the limitations on contacts with the public and coworkers unpersuasive. (Dkt. No. 7-8 at 23).

The Plaintiff acknowledges that the ALJ addressed both consistent and inconsistent portions of the record in his assessment of the opinions of the various medical experts, but contends the ALJ failed to explain "how or why he chose one side of the evidence over the other." Plaintiff contends that the ALJ simply summarized the evidence and stated a conclusion, without reconciling the conflicting evidence, thereby frustrating meaningful review. (Dkt. No. 13 at 10).

The Magistrate Judge, after reviewing the various reports of the experts and record evidence, concluded that the ALJ appropriately explained his findings and that Plaintiff was essentially asking him to re-weigh the evidence. (Dkt. No. 12 at 19-20). The Court agrees. The Court was able to fully understand the ALJ's reasoning for finding that Plaintiff retained the RFC to perform medium work so long as there were limitations on interactions with co-workers and a limitation to simple, routine tasks, notwithstanding Plaintiff's significant impairments with interpersonal relationships and anger management. In the final analysis, the ALJ was required to weigh conflicting record evidence and to reach a conclusion regarding whether the recognized impairments rendered Plaintiff disabled. The Court finds the ALJ decision ably addressed these issues and reached a conclusion consistent with regulatory and statutory standards.

The Court adopts, with one exception[1], the R & R of the Magistrate Judge (Dkt. No. 12) as the Order of the Court. The decision of the Commissioner is affirmed.

**AND IT IS SO ORDERED.**

s/ Richard M. Gergel  
Richard Mark Gergel  
United States District Judge

Charleston, South Carolina  
September 24, 2024

---

[1] The Magistrate Judge questioned whether the Fourth Circuit's decision in *Shelley C. v. Commissioner of Social Security*, 61 F.4th 341 (2023) was still good law since it applied the treating physician regulation no longer in effect and not applicable to this action. (Dkt No. 12 at 9). *Shelley C.* is a lengthy opinion that at times clearly applies provisions of the treating physician rule that are no longer in effect. However, the portion of the *Shelley C.* decision related to weighing subjective evidence is still likely persuasive authority. Since the two sentences in the Magistrate Judge's decision questioning the continued viability of *Shelley C.* are unnecessary to support the decision of the ALJ in this case, the Court declines to adopt those two sentences as part of the Order of the Court. ("Moreover, *Shelley C.* involved the application of opinion analysis regulations not applicable to the plaintiff's application, which was filed after March 27, 2017. . . As such, the undersigned finds unavailing the plaintiff's assertion that the ALJ's opinion analysis did not comport with *Shelley C.*"). The Court finds that the ALJ's decision meets the standard for *Shelley C.* regarding the evaluation of subjective evidence.